UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OMERO ORTIZ, | ) |
| | ) |
| Plaintiff, | ) 21 C 3378 |
| | ) |
| vs. | ) Judge Gary Feinerman |
| | ) |
| ANTHONY RENTERIA, CHRISTOPHER CALHOUN, | ) |
| TOWN OF CICERO, ILLINOIS, a municipal | ) |
| corporation, and METRO PARAMEDIC SERVICES, | ) |
| INC., an Illinois corporation, | ) |
| | ) |
| Defendants. | ) |

**M<small>EMORANDUM</small> O<small>PINION AND</small> O<small>RDER</small>**

Omero Ortiz brought this suit against Anthony Renteria, Christopher Calhoun, the Town of Cicero, Illinois, and Metro Paramedic Services, Inc., alleging violations of 42 U.S.C. § 1983 and Illinois law. Doc. 1. On Defendants' Rule 12(b)(6) motions directed at Ortiz's amended complaint, Doc. 9, the court dismissed without prejudice his § 1983 claims, relinquished its supplemental jurisdiction over his state law claims, and allowed him to replead all his claims. Docs. 37-38 (reported at 2021 WL 5083744 (N.D. Ill. Nov. 2, 2021)). Ortiz filed a second amended complaint, Doc. 40, and Defendants again move to dismiss under Rule 12(b)(6), Docs. 45, 46. Defendants' motions are granted: the court dismisses with prejudice Ortiz's § 1983 claims, and again relinquishes its supplemental jurisdiction over his state law claims.

**Background**

In resolving Defendants' Rule 12(b)(6) motions, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and

1

referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Ortiz's briefs opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013). The facts are set forth as favorably to Ortiz as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth the facts at the pleading stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

On July 4, 2020, Ortiz was setting off fireworks in his home's backyard with family and friends. Doc. 40 at ¶ 17; Doc. 49 at 6. An unexpected blast severely injured Ortiz, amputating his left hand from his arm and his left arm from his shoulder. Doc. 40 at ¶ 17. Cicero paramedics Renteria and Calhoun arrived on the scene, rendered medical aid, put Ortiz on a stretcher, and placed him in an ambulance. *Id*. at ¶ 19.

Renteria and Calhoun took photographs of Ortiz inside the ambulance without his consent. *Id*. at ¶ 21. One photograph depicted Ortiz's severed hand, while another showed his face, torso, and bleeding wound. *Ibid*. The paramedics posted the photographs on Snapchat, accompanied by the caption "Feeling blessed" and several emojis. *Ibid*. Some who saw the images took screenshots and disseminated them further on Snapchat and other social media sites. *Ibid*.

Since the accident, Ortiz has attempted to keep his amputated limb private from others. *Id*. at ¶ 22. To that end, he avoided leaving his home until he obtained a prosthetic arm in December 2020. *Ibid*. Ortiz "is still reluctant to go out in public even with the prosthetic arm, and tries to keep the fact of his missing arm private and hidden from the public." *Ibid*.

**Discussion**

Ortiz brings two claims under § 1983, one for an alleged violation of his constitutional rights and another for an alleged conspiracy to violate his constitutional rights. Doc. 40 at ¶¶ 24-34, 66-71. Both claims require him to plead a constitutional violation. *See Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir. 1982) (holding that "an actual denial of a civil right is necessary before a cause of action [for conspiracy] arises"). For both claims, Ortiz alleges a violation of his substantive due process right to medical privacy under the Fourteenth Amendment's Due Process Clause. Doc. 40 at ¶¶ 33, 67; Doc. 49 at 3, 6; Doc. 50 at 2, 5, 8.

As the court observed in its earlier opinion, precedent holds that substantive due process protects the "right to the privacy of medical, sexual, financial, and perhaps other categories of highly personal information—information that most people are reluctant to disclose to strangers." *Wolfe v. Schaefer*, 619 F.3d 782, 785 (7th Cir. 2010); *see also Coffman v. Indianapolis Fire Dept.*, 578 F.3d 559, 566 (7th Cir. 2009) (recognizing a "'qualified' constitutional right to the confidentiality of medical records and communications"). The "right is defeasible only upon proof of a strong public interest in access to or dissemination of the information." *Wolfe*, 619 F.3d at 785; *see also Denius v. Dunlap*, 209 F.3d 944, 956 (7th Cir. 2000) ("[T]his Circuit has outlined a clearly established 'substantial' right in the confidentiality of medical information that can only be overcome by a sufficiently strong state interest.").

As the Seventh Circuit has explained, "medical information may be a form of protected confidential information because of its intimate and personal nature." *Denius*, 209 F.3d at 957. Such "intimate and personal" information may include a person's HIV status, *see Anderson v. Romero*, 72 F.3d 518, 523 (7th Cir. 1995), use of prescription drugs, *see Schaill v. Tippecanoe Cnty. Sch. Corp.*, 864 F.2d 1309, 1322 n.19 (7th Cir. 1988), or transgender status, *see Grimes v.*

3

*Cnty. of Cook*, 455 F. Supp. 3d 630, 638 (N.D. Ill. 2020). Such information does not include matters that are readily observable or ascertainable, such as a person's height and weight. *See Best v. Berard*, 837 F. Supp. 2d 933, 938 (N.D. Ill. 2011); *see also Chasensky v. Walker*, 740 F.3d 1088, 1096 (7th Cir. 2014) (holding that a plaintiff had no fundamental right to privacy in financial records that had already been made public).

For context, it is useful to begin with the court's earlier opinion. In opposing dismissal at that juncture, Ortiz noted that the photographs taken and posted by the paramedics revealed that he had lost his arm in a horrific accident. Doc. 23 at 7. The court explained that, as alleged, the paramedics' public dissemination of the photographs did not violate Ortiz's right to privacy in medical information. That Ortiz suffered a horrific accident, the court reasoned, is not private medical information because it is not medical. 2021 WL 5083744 at *2. And that Ortiz lost an arm, the court noted, is not private medical information because it is not private, but rather a readily observable condition. *Ibid*. The court added the offhand observation that Ortiz "d[id] not allege that he considers his lost arm itself—as opposed to the fact that he lost his arm in a fireworks accident—to be private, nor d[id] he allege that he could keep private the fact of his lost arm or even that he has any desire to do so." *Ibid*.

Ortiz's second amended complaint adds new allegations concerning his desire and efforts to keep his missing arm private. As noted, Ortiz alleges that he avoided leaving his home until he had obtained a prosthetic arm, and that even with a prosthetic he is reluctant to leave home given his wish to keep private his amputated limb. Doc. 40 at ¶ 22. And Ortiz now emphasizes that the photographs were taken in the "private confines" of an ambulance during a medical emergency. *Id*. at ¶¶ 20-21; Doc. 49 at 5; Doc. 50 at 5.

4

Those new allegations do not save Ortiz's § 1983 claims from dismissal. The medical privacy component of substantive due process protects from disclosure private medical information that "most people are reluctant to disclose to strangers," *Wolfe*, 619 F.3d at 785, and for which there is a "reasonable expectation that th[e] information w[ill] remain confidential," *Denius*, 209 F.3d at 957. Notwithstanding Ortiz's alleged subjective desire and efforts to keep his missing limb private, nothing in the complaint supports the inference that "most people" would be "reluctant to disclose [a missing limb] to strangers," *Wolfe*, 619 F.3d at 785, like they might HIV status. *See Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586-87 (7th Cir. 2021) ("Fundamentally, the plausibility determination is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.") (internal quotation marks omitted). And although Ortiz hopes that his prosthetic will make it difficult for others to see that he has a missing limb—and even if his efforts might succeed in some circumstances, just as a person might succeed on occasion in using clothing to obscure his weight—it is not "reasonable" to expect that an amputated limb will "*remain* confidential." *Denius*, 209 F.3d at 957 (emphasis added). Indeed, Ortiz effectively admits as much with his allegation that he remains "reluctant to go out in public even with the prosthetic arm." Doc. 40 at ¶ 22. Nor does Ortiz's emphasis on the setting of the photographs—inside an ambulance during a medical emergency—transform the fact of his missing limb into information protected from disclosure by substantive due process.

Ortiz's substantive due process claim accordingly is dismissed, and without an underlying constitutional violation, his § 1983 conspiracy claim is dismissed as well. That leaves Ortiz's state law claims. Because the parties are not diverse, Ortiz correctly premises subject matter jurisdiction over his state law claims on the supplemental jurisdiction statute, 28

U.S.C. § 1367(a). Doc. 40 at ¶ 8. Section 1367(c)(3) provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if … the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "As a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining pendent state claims." *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007); *see also Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016) ("[W]hen the federal claims are dismissed before trial, there is a presumption that the court will relinquish jurisdiction over any remaining state law claims."). That general rule has three exceptions: "when the refiling of the state claims is barred by the statute of limitations; where substantial judicial resources have already been expended on the state claims; and when it is clearly apparent how the state claim is to be decided." *Williams*, 509 F.3d at 404; *see also RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 480 (7th Cir. 2012).

In its earlier opinion, the court held that none of the exceptions for relinquishing jurisdiction over the state law claims was met. 2021 WL 5083744 at *3. No party contends, nor has the court on its own determined, that circumstances have changed in that regard. Relinquishing jurisdiction over the state law claims is therefore the appropriate course under § 1367(c)(3). *See Dietchweiler*, 827 F.3d at 631; *RWJ Mgmt. Co.*, 672 F.3d at 479-82.

## Conclusion

Ortiz's § 1983 claims are dismissed. Ortiz has had three opportunities to plead viable § 1983 claims, and because there is no reasonable basis to believe that the flaw in those claims could be cured by amendment, the dismissal is with prejudice. *See Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015) ("District courts … have broad discretion to deny leave to amend … where the amendment would be futile.") (internal quotation marks omitted). The court

relinquishes its supplemental jurisdiction over Ortiz's state law claims, which he may bring in state court, subject of course to any applicable defenses.

August 11, 2022

_____
United States District Judge